UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

MELVIN PORTER,

                                    Plaintiff,

  -against-

NYS DOCCS SERGEANT TIMOTHY BUNCH,
NYS DOCCS OFFICER JOSHUA PAPPAS, NYS
DOCCS OFFICER STEVEN GASCHO, NYS
DOCCS OFFICER MICHAEL SORGE, NYS
DOCCS SERGEANT COLE (first name
unknown), NYS DOCCS OFFICER WAITH (first
name unknown), NYS DOCCS NURSE CAROL
LICIAGA, and NYS DOCCS JOHN AND JANE
DOE CORRECTIONAL OFFICERS 1-15,

                                    Defendants.

-------------------------------------------------------------- x

**FIRST AMENDED
COMPLAINT**

Jury Trial Demanded

No. 16 Civ. 5935

PRELIMINARY STATEMENT

In this case, Plaintiff Melvin Porter, who is a sixty-six year-old man, alleges that

Individual Corrections Officers with the New York State Department of Corrections

and Community Supervision ("NYS DOCCS") violated his rights in two recent

incidents while he was in their custody.

First, on December 30, 2014, Defendant Bunch unilaterally and arbitrarily

ordered that Mr. Porter and other inmates be deprived of water and electricity until

someone provided him with requested information which none of the inmates had.

This action was without justification, did not follow departmental procedures, and

violated Mr. Porter's Eighth Amendment right to be free from cruel and unusual punishment, and other rights as well.  Mr. Porter challenged the deprivation order using the correctional facility's procedures, and obtained a favorable result stating that Bunch's action was improper.

Next, on November 23, 2015, Defendants Pappas, Sorge, Gascho and Waith assaulted Mr. Porter, or failed to stop an assault of Mr. Porter when he did not move fast enough for their liking (Mr. Porter's mobility had been impacted by a recent knee surgery and, in fact, at the time of the assault Mr. Porter was on his way back to the facility from a follow up appointment in Manhattan relating to that surgery).  Then, in an effort to cover up for their misconduct, of which Mr. Porter's injuries were proof, Defendants brought false charges against Mr. Porter falsely stating that he assaulted them first such that they were justified in beating him.

As a consequence of Mr. Porter making successful use of the correctional facility's administrative procedures, the fabricated charge against Mr. Porter was dismissed, but not before the seriously-injured Mr. Porter spent roughly one month in punitive segregation under particularly egregious conditions.

## NATURE OF THE ACTION

1.     This is an action to recover money damages for Defendants' violation of Mr. Porter's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3.      This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

5.      Plaintiff demands a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6.      Plaintiff Melvin Porter is incarcerated at Sullivan Correctional Facility in Fallsburg, New York, and he was a resident of that institution at all times relevant to this action.

7.      Defendants NY DOCCS Sergeant Timothy Bunch, Sergeant Cole, Officer Joshua Pappas, Officer Steven Gascho, Officer Michael Sorge, Officer Waith and New York State John and Jane Doe Correctional Officers 1-15, all individually, were at all times relevant duly sworn corrections officers, employees and agents of the NYS DOCCS and were acting under the supervision of said department and according to their official duties.   They are sued in their individual capacities.

8. As for Defendant Nurse Carol Liciaga, individually, she was at all times relevant a registered nurse, employee and agent of the NYS DOCCS and was acting under the supervision of said department and according to her official duties. Alternatively, Defendant Nurse Carol Liciaga may have worked for a company which has a contract with NYS DOCCS to provide medical services to its inmates at Sullivan. She is sued in her individual capacity.

9. At all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York.

10. Each and all of the acts of the Individual Defendants were done by said Defendants while acting within the scope of their employment by Defendant State of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. In this action Mr. Porter seeks redress for the violation of his constitutional rights. At the time each of the herein described violations occurred, Mr. Porter successfully availed himself of the NYS DOCCS administrative procedures designed to permit a prisoner to challenge unconstitutional action taken against him by individual officers under color of state law.

## STATEMENT OF FACTS

**Defendant Bunch's December 30, 2014 Deprivation Order**

12.     On or about December 30, 2014, Mr. Porter was being held in A-North Block at Sullivan Correctional Facility.

13.     At approximately 11:00 AM, Defendant Bunch was looking for a metal rod which had gone missing from a mop bucket's ringer in the Porters' cells in A-North Block.

14.     On information and belief, this metal rod had been missing from that mop bucket for many months.  Inmates could not answer Defendant Bunch's questions about the long-missing item's whereabouts.

15.     Defendant Bunch's strategy for finding the metal rod included shutting off all water and electricity to A-North Block.  According to Defendant Bunch, in sum and substance, this would assure that no inmate could destroy the metal rod before it was found.  (It should be noted that on information and belief, the metal rod that Defendant Bunch was asking about was so large, it could not possibly have been flushed down a toilet such that it is not certain how an inmate would have destroyed evidence of it through the plumbing.  In addition, it is not clear how an inmate would have destroyed it using electricity.)

16.     The NYS DOCCS and society in general consider the provision to inmates of water and electricity to be a minimum standard necessary for inmate's

cleanliness, health and morale.  Among other things, water and electricity relate to the availability of functioning washstands and toilets.  NYS DOCCS Directive # 4009, Effective Date 8/21/2013.  Water of course also relates to a human being's most basic needs for survival.

17.    Because water and electricity are minimum standards, NYS DOCCS Directive # 4933 states that any "deprivation order" which deprives inmates of, inter alia, water and electricity, for reasons of safety and security must be authorized by a correctional facility's Deputy Superintendent for Security.  A deprivation order cannot be imposed at an individual officer's whim.

18.    Defendant Bunch did not follow the above-noted procedure.  He unilaterally decided that he would cut all inmates off from water and electricity until one of them came forward with the herein described piece of the mop bucket.

19.    Defendant Bunch was then called away to a different part of Sullivan Correctional Facility and did not return until much later.  In the meantime, he left his deprivation order in effect.  It was not until approximately 6:30 PM before Defendant Bunch returned and restored the water and electricity.

20.    Defendant Bunch's use of water deprivation and electricity deprivation to coerce inmate behavior was unjustified and severe punishment which a reasonable person could plausibly find to shock the conscience of civilized society.

21.    Defendant Bunch used this inhumane method of control intentionally and

maliciously.

22.     Defendant Bunch's unconstitutional act caused Mr. Porter the harm that naturally flows from the deprivation of water and electricity.  In addition, Mr. Porter, due to his advanced age and illnesses, suffered greatly at the loss of water because, for example, regular use of the toilet is important to him and also because he needed water in order to timely take his medications, of which there are many.  Furthermore, Mr. Porter is a Muslim, which religion requires regular prayer throughout the day.  Before these prayers it is required that an adherent wash.  Thus, Defendant Bunch also compromised Mr. Porter's practice of his religion in that he was unable to appropriately complete five of his prayers.

23.     Mr. Porter timely followed Sullivan Correctional Facility's grievance procedure and Mr. Porter also timely filed a Notice of Intention with the NYS Attorney General, both challenging Defendant Bunch's actions that day.

24.     In the context of the investigation that took place after Mr. Porter filed his grievance, Defendant Bunch and Defendant Officer Doe falsely stated that the inmates did not suffer greatly due to the lack of water because the staff shuttled water into the housing block manually to compensate.  This was not true and the false statement was designed to make DOCCS investigators incorrectly believe that the inmates generally and Mr. Porter specifically did not suffer the actual consequences of Defendant Bunch's act, although they did.

25.     In spite of Defendant Bunch's efforts to minimize what occurred, the Central Office Review Committee concluded that going forward, "[i]t is recommended that all staff . . . not subject the inmate population to conditions that amount to a clear violation of the 8th amendment that precludes any cruel and unusual treatment."

**Defendants' November 23, 2015 Assault Of Mr. Porter And Their Fabrication Of Charges Against Him**

26.     In September 2015, Mr. Porter had knee replacement surgery.

27.     The surgery required Mr. Porter to make regular visits to hospital for follow up treatment and check-ups.

28.     On November 23, 2015, Mr. Porter was taken to Montefiore Medical Center for one of these follow up visits.

29.     Three other inmates also joined Mr. Porter's trip to receive off-site medical care in order to receive medical treatment for themselves.  Two of these inmates, on information and belief, were Michael McQuilkin and Derrick Thompson.

30.     At the end of the day, Mr. Porter and the three other inmates arrived back at Sullivan Correctional Facility where they were brought in through the infirmary intake area.

31.     Of the four inmates, Mr. Porter was the last to enter the infirmary intake area, as he still used a cane and walked slowly as a consequence of his knee.

32.     When Mr. Porter entered the infirmary intake area, he found that there were only two chairs, which were already occupied by two of the three inmates who

had come in before him.  These two inmates were sitting down in order to have their restraints removed.  The third inmate had gone to the bathroom.

33.     Mr. Porter thus stood against the wall, stretching his legs after having just been sitting in a vehicle for the roughly four-hour drive from Montefiore to Fallsburg, NY.

34.     After one of the inmates had his restraints removed, he got up from the chair, and Defendant Pappas told Mr. Porter to sit down in the now-empty chair for his turn.

35.     Mr. Porter was in the process of going to the chair when the third inmate returned from the bathroom and sat in the chair so that his restraints could be taken off.

36.     Upon seeing the third inmate in the chair, Defendant Pappas began angry that Mr. Porter had not moved more quickly to sit down as Defendant Pappas had ordered him.

37.     Defendant Pappas told Mr. Porter, in sum and substance, that he would "deal with [him] later."

38.     Once the other three inmates had their restraints removed, Defendant Pappas sent them to their respective blocks such that Mr. Porter remained the only inmate left in the infirmary intake area.

39.     Defendant Pappas grabbed Mr. Porter by the collar and asked, in sum and

substance, "What the fuck is wrong with you?"

40.    Defendant Sorge and Defendant Pappas then used unjustified physical force to throw Mr. Porter to the floor, whereupon Defendant Pappas, Defendant Sorge and also Defendant Gascho, who was also in the room, punched, kicked and hit Mr. Porter with their batons.  This assault was also wholly unjustified and Defendants' blows landed, among other places, on Mr. Porter's back, legs and shoulders.   In addition, one or more Defendants punched Mr. Porter in the head with a closed fist.

41.    Defendants placed Mr. Porter in mechanical restraints and issued an alert to falsely signal to others on duty that Mr. Porter had himself acted out in some way requiring physical force.  This was not true.  Mr. Porter did not ever assault or attempt to assault any of Defendants or other staff.

42.    Defendant Waith hurried into the infirmary intake in response to the alert and, despite the fact that he saw that Mr. Porter was in restraints and wholly submissive, immediately joined in on the assault, helping Defendant Pappas, Defendant Sorge and Defendant Gascho in picking Mr. Porter's entire body upon, whereupon the group deliberately ran Mr. Porter's head into the wall.

43.    Defendants took Mr. Porter to see Defendant Liciaga, who took some photographs of Mr. Porter.  In her notes, Defendant Liciaga, to help cover up the other Defendants' misconduct, wrote that Mr. Porter only suffered small abrasions to his wrists as a consequence of handcuffs.  This was an intentional effort to obfuscate that

Defendants had actually used undue force upon Mr. Porter which caused him much more grievous injury.  In the event that Defendant Liciaga is an employee who works for a contractor for the NYSDOCCS, her acts and state of mind establish conspiracy. In the event that Defendant Liciaga is directly employed by the NYS DOCCS, her acts constitute a failure to intervene to protect Mr. Porter from clear peril of significant physical injury at the hands of her fellow NYS DOCCS employees.

44.     Mr. Porter was not permitted to receive medical treatment off-site. Instead, he was sent to punitive segregation.

45.     Defendant Pappas wrote an infraction report falsely accusing Mr. Porter—a sixty-six year-old man with an injured leg requiring him to use a cane—with violent conduct, creating a disturbance, assault on staff and refusing a direct order.

46.     As a result of Defendant Pappas's fabrications, Mr. Porter had to spend roughly twenty-eight days in punitive segregation suffering significant and painful physical injury awaiting a disciplinary hearing.

47.     At the December 21, 2015, disciplinary hearing, the hearing officer took testimony from Defendant Pappas, Defendant Sorge, Defendant Gascho, two of the three inmates who arrived back at Sullivan Correctional Facility with Mr. Porter, and Mr. Porter himself.

48.     The hearing officer found Mr. Porter not guilty of the gravest charges— violent conduct, creating a disturbance, and assault on staff—because Defendants'

testimonies about what happened when they were all in the same room together that night bore too many inconsistencies.  It is Mr. Porter's contention that the reason for the inconsistencies is that the charges against him were maliciously fabricated.

49.    The hearing officer found Mr. Porter guilty only of refusing a direct order, stating that Mr. Porter had admitted the "offense" of "not mov[ing] quick [sic] enough" when he was "initially directed to sit down in the chair to have his restraints removed." As a consequence of Mr. Porter not moving quickly enough (due to a disability that everyone involved readily acknowledged), the hearing officer noted that "the vacant chair was taken by 1 of the 3 other Sullivan inmates" before Mr. Porter could take it. The hearing officer sentenced Mr. Porter to time served and loss of recreation, loss of packages, loss of commissary, and loss of phone privileges already suffered, for the fact that his physical disability precluded him from moving more quickly.  Again, it is Mr. Porter's contention that this was to cover for the misconduct of the Defendant officers.

50.    Defendants' assault of Mr. Porter caused him new severe physical injuries, aggravated his existing injuries, including his knee replacement for which he was still in recovery, caused him mental and emotional trauma, and more.  In terms of Mr. Porter's physical injuries, he suffered and continues to suffer migraine headaches, dizziness, excruciating pain in his back, shoulders, arms and legs.   Mr. Porter experiences sleeplessness as well.

51.    As a result of the foregoing, Mr. Porter is entitled to compensatory and

punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

52.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

53.     Defendants, by their conduct toward Plaintiff alleged herein, violated Plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

54.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

55.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
## Excessive Force

56.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

57.     Defendants violated the Fourth and Fourteenth Amendments in using excessive and unjustified physical force against Plaintiff as described herein, causing him serious physical harm in the process.

58.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

59.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
## Cruel and Unusual Punishment

60.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

61.     Defendants violated the Eighth and Fourteenth Amendments because a reasonable jury would find their actions against Mr. Porter as described herein to be objectively shocking and because Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

62.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
## Deliberate Indifference to Serious Medical Need

63.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

64.     Defendants violated the Eighth and Fourteenth Amendments because their actions as described herein caused a serious deleterious effect to Mr. Porter's health and bodily integrity and Defendants knew that Mr. Porter had fragile health that was vulnerable such that they had the requisite culpable state of mind when committing their actions.

65.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

66.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## Deprivation of Due Process

67.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

68.     Defendant Bunch violated the Fifth and Fourteenth Amendments because his acts deprived Mr. Porter of a cognizable constitutional interest in an arbitrary fashion, causing him great harm in the process as herein described.

69.     Defendant Bunch's unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

70.     As a direct and proximate result of Defendant Bunch's unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## Failure To Intervene

71.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

72.     Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

73.     Accordingly, Individual Defendants who failed to intervene violated the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

74.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

75.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

76.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective State authority, which is forbidden by the United States Constitution.

77.    As a result of the foregoing, Mr. Porter is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiff respectfully request the following relief:

A. An order entering judgment for Plaintiff against Defendants on each of their claims for relief;

B. Awards to Plaintiff for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, Eighth and Fourteenth Amendment rights of Plaintiff, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

C. Awards to Plaintiff of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiff, the amount to be determined at jury trial, which Plaintiff respectfully demand pursuant to FRCP 38;

D. Awards to Plaintiff of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:     October 21, 2016
           New York, New York


_____/s_____

Ryan Lozar
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562
Fax: 1-877-666-4456
ryanlozar@gmail.com

*Attorney for Plaintiff*