UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MELVIN PORTER,

         Plaintiff,

       -against-                16 Civ. 5935 (KMK)

NYS DOCCS SERGEANT TIMOTHY BUNCH,
et al.,

         Defendants.

-------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
# TO DISMISS CERTAIN CLAIMS IN THE SECOND AMENDED COMPLAINT

ERIC SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Defendants
120 Broadway - 24th Floor
New York, New York 10271
(212) 416-6046


COLLEEN K. FAHERTY
Assistant Attorney General
   of Counsel

# Contents

Table of Authorities ...................................................................................................i

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF ALLEGATIONS ................................................................................. 2

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT ................................................................................................................ 4

POINT I:    PLAINTIFF FAILS TO PLEAD THE PERSONAL INVOLVEMENT OF
            DEFENDANTS IN THE VIOLATION OF HIS CONSTITUTIONAL RIGHTS ...... 4

POINT II:   PLAINTIFF FAILS TO STATE A CONDITIONS OF CONFINEMENT CLAIM
            BECAUSE THE DEPRIVATION ORDER IMPOSED, AT MOST, A *DE MINIMIS*
            BURDEN ON PLAINTIFF AND IS NOT SUFFICIENT TO STATE A CLAIM
            UNDER THE EIGHTH AMENDMENT ................................................................ 6

POINT III:  THE PRISON LITIGATION REFORM ACT BARS PLAINTIFF'S CLAIMS
            BECAUSE HIS INJURIES WERE, AT BEST, DE MINIMIS ................................. 8

POINT IV:   PLAINTIFF FAILS TO ALLEGE A SUBSTANTIAL BURDEN ON HIS FIRST
            AMENDMENT RIGHTS ..................................................................................... 9

POINT V:    PLAINTIFF FAILS TO ALLEGE THAT ANY DEFENDANTS VIOLATED HIS
            DUE PROCESS RIGHTS ................................................................................. 13
            A.   *The Deprivation Order Did Not Violate Plaintiff's Rights to Due Process* ...................... 13
            B.   *Plaintiff's Time Spent in Punitive Segregation Did Not Violate Due Process* .................. 14

POINT VI:   PLAINTIFF FAILS TO STATE A FAILURE TO INTERVENE CLAIM .................... 14
            A.   *Nurse Liciaga* ........................................................................................... 15
            B.   *Defendant Bunch* ....................................................................................... 166

POINT VII:  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY .................... 16

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) ..........................................................15, 16

*Arce v. Walker*, 139 F.3d 329 (2d Cir. 1998) ...........................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)........................................................................4, 17

*Beckford v. New York State of Mental Health*, 06-CV-561, 2010 WL 1816689 (W.D.N.Y. May 3, 2010)........................................................................................................................7, 8

*Bourdon v. Roney*, No. 99-CV-769, 2003 WL 21058177 (N.D.N.Y. Mar. 6, 2003) .............8

*Brown v. Graham*, 470 Fed. Appx. 11 (2d Cir. 2012) .........................................................11

*Calhoun v. New York City Dept. of Correction*, No. 10-CV-182, 2014 WL 144659 (S.D.N.Y. Jan. 14, 2014)..........................................................................................................................8

*Clay v. Lee*, 13-CV-7662, 2017 WL 436041 (S.D.N.Y. Jan. 27, 2017) .............................8, 9

*Cox v. Malone*, 199 F. Supp. 2d 135 (S.D.N.Y. 2002) ...........................................................9

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001)......................................................15

*Dillon v. City of New York*, No. 12-CV-7775, 2014 WL 658095 (S.D.N.Y. Feb. 19, 2014).................9

*Espada v. Schneider*, 522 F.Supp.2d 544 (S.D.N.Y.2007)..................................................15

*Farmer v. Brennan*, 511 U.S. 825 (1994)................................................................................7

*Fincher v. City of New York*, No. 09-CV-10318, 2010 WL 3719236 (S.D.N.Y. Sept. 20, 2010) ..........9

*Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003) ..................................................................10

*Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ..................................................13, 15

*Gaston v. Coughlin*, 249 F.3d 156 (2d Cir. 2001)..................................................................4

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013).........................................16

*Hynes v. Squillance*, 143 F.3d 653 (2d Cir. 1998)...............................................................14

*Johnson v. Guiffere*, No. 04-CV-57, 2007 WL 3046703 (N.D.N.Y. Oct. 17, 2007)............10

*Leach v. New York City*, No. 12-CV-3809, 2013 WL 3984996 (S.D.N.Y. Aug. 2, 2013)............11, 12

*McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004)........................................................10

*Mowry v. Noone*, No. 02-CV-6257, 2004 WL 2202645 (W.D.N.Y. Sept. 30, 2004) .........15

*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) .............................................................12

*Palmer v. Richards*, 364 F.3d 60 (2d Cir. 2004)..................................................................14

*Pearson v. Callahan*, 555 U.S. 223 (2009)..........................................................................................16

*Powell v. City of New York*, No. 14-CV-9937, 2016 WL 4159897 (S.D.N.Y. July 14, 2016)........10, 11

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ................................................................10

*Sandin v. Conner*, 515 U.S. 472 (1995).....................................................................................13

*Scalpi v. Town of East Fishkill*, No. 14-CV-2126, 2016 WL 858916 (S.D.N.Y. Feb. 29, 1016)...........7

*Scott v. Shansiddeen*, No. 12-CV-84, 2013 WL 3187071 (N.D.N.Y. June 20, 2013)....................11, 12

*Simmons v. Adamy*, 987 F. Supp. 2d 302 (W.D.N.Y. 2013)...........................................................11

*Sims v. Gorman*, 09-CV-6643, 2012 WL 566875 (W.D.N.Y. Feb. 21, 2012)....................................13

*Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).......................................4

*Taravella v. Town of Wolcott*, 599 F.3d 129 (2d Cir. 2010)....................................................................16

*Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002).........................................................................9

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013)....................................................................................6

*Warren v. Irvin*, 985 F.Supp. 350 (W.D.N.Y. 1997) ........................................................................7, 8

*White v. Pauly*, 137 S.Ct. 548 (2017)................................................................................................16

*Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015)..................................................................................7

*Williams v. Russo*, No. 01-CV-6401, 2009 WL 185758 (W.D.N.Y. Jan. 26, 2009) ...........................15

*Youmans v. City of N.Y.*, 14 F. Supp. 3d 357 (S.D.N.Y. 2014) .............................................................6

## Statutes and Regulations
42 U.S.C. § 1983 .............................................................................................................................1

42 U.S.C. § 1997e(e)......................................................................................................................10

## Other Authorities
Federal Rule of Civil Procedure 12(b)(6) ........................................................................................1

Rule 12(b)(6) of the Federal Rules of Civil Procedure......................................................................4

Defendants New York Department of Corrections and Community Supervision ("DOCCS") Sergeant Timothy Bunch, Correction Officer ("C.O.") Joshua Pappas, C.O. Steven Gascho, C.O. Michael Sorge, Sergeant William Cole, C.O. Clive Waith, and Nurse Carol Liciaga, by their attorney, Eric T. Schneiderman, Attorney General of the State of New York, submit this memorandum of law in support of their motion to dismiss certain claims in the Second Amended Complaint ("SAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff Melvin Porter brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants, employees and officials of the New York Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights by subjecting him to cruel and unusual punishment, interfering with his ability to practice his religion, depriving him of due process, and treating his serious medical needs with deliberate indifference. Moreover, Plaintiff alleges that certain Defendants failed to intervene to prevent others from infringing upon his rights. Specifically, Plaintiff alleges two separate instances of harm. First, he claims that in 2014 Defendant Bunch ordered the deprivation of his electricity and water for seven-and-a-half hours, in violation of his Eighth Amendment and due process rights. Next, he alleges a separate incident occurring in 2015, during which Defendants Sorge, Gascho, Pappas, Waith, and Cole allegedly used excessive force on him and colluded with Defendant Liciaga, who failed to provide proper medical care, to falsely cover up the incident.

Plaintiff fails to state an Eighth Amendment claim against Defendant Bunch because the deprivation at issue is at most a *de minimis* infringement upon Plaintiff's rights, and is not sufficiently serious to state a claim for a constitutional violation. Moreover, Plaintiff's First Amendment claim is similarly deficient because the temporary lack of water does not rise to the

level of a constitutional violation since it is the kind of burden that is both isolated and insubstantial.

Perhaps even more basically, Plaintiff makes broad allegations of constitutional violations; however, Plaintiff fails to allege that certain Defendants were personally involved in any of the particular alleged violations of Plaintiff's rights. Plaintiff does not allege facts indicating that any of the Defendants accused of participating in the alleged November 2015 incident participated in the decision to deprive Plaintiff of electricity and water; nor does Plaintiff allege that Defendant Bunch participated in the alleged November 2015 force incident. Finally, Defendants are entitled to qualified immunity because Plaintiff has failed to allege that any Defendant violated his constitutional rights, and because reasonable officials in Defendants' positions could have believed that Defendants' alleged actions did not violate a clearly established constitutional right.

## STATEMENT OF ALLEGATIONS[1]

Plaintiff alleges that on December 30, 2014, Defendant Sergeant Timothy Bunch issued a deprivation order on the A-North Block at Sullivan Correctional Facility ("Sullivan CF"). *See* SAC, ¶ ¶ 12, 25. The A-North Block housed approximately sixty inmates, *id.* ¶ 22, including several inmates who served the facility as work porters. *Id.* at ¶ 26. Specifically, Defendant Bunch ordered the temporary shut-off to the electricity and water for the entire block while Defendant Bunch and other non-party facility officers searched for a missing mop wringer handle. *Id.* at ¶¶ 25-26. The mop ringer is a metal piece connected to the mop bucket. *Id.* at ¶ 25. The wringer handle had been noticeably missing during inventory, but not discovered or returned prior to the December 30, 2014 search. *See id.*

---

[1] Defendants assume the truth of non-conclusory allegations of fact in the Complaint solely for purposes of Defendants' Motion to Dismiss. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Plaintiff noticed the shut-down to his cell's water and electricity at approximately 11:00am, after he returned from his library call out and observed Defendant Bunch "indiscriminately" searching individuals and cells. *Id.* at ¶¶ 23, 25. However, at some point, while Defendant Bunch was conducting the search for the wringer handle, Defendant Bunch was called away to a different part of Sullivan CF. *Id.* at ¶ 52. The electricity and water remained off until Defendant Bunch returned at approximately 6:30pm. *Id.* Plaintiff alleges that he did not receive drinking water while the water and electricity were shut off and could not take his medications. *Id.* at ¶ 44. Plaintiff takes five categories of medication: for blood pressure, for his sinuses, to manage hepatitis C, to manage a bowl condition, and pain medication to manage the pain from a knee surgery which had occurred "a few months prior." ¶¶ 12, 14-19. Plaintiff's allegations of physical manifestations of pain, however, are entirely conclusory and he does not specify what specific medications he was unable to take. Additionally, he alleges that he was unable to perform his prayer ablutions "in accordance with his religious beliefs" because of the alleged lack of water. ¶ 46.

Plaintiff also alleges that on November 23, 2015, after he returned from an outside medical visit, Defendants Gascho, Pappas, Cole, Waith and Sorge physically assaulted him (the "Force Incident"), causing him injuries. *Id.* ¶¶ 74-76. After the Force Incident, Plaintiff was brought to Defendant Nurse Liciaga to document and treat his injuries. *Id.* at ¶ 79. Plaintiff alleges that Nurse Liciaga "mis-handle[d]" Plaintiff's injuries, did not recommend Plaintiff for treatment at a nearby hospital, and "treated [Plaintiff] minimally for minimal injuries." SAC ¶ 80, 82. Furthermore, Plaintiff alleges Nurse Liciaga did not accurately document Plaintiff's injuries. *Id.* at ¶ 79.

Defendant Pappas issued Plaintiff a misbehavior report for the Force Incident, accusing Plaintiff of "violent conduct, creating a disturbance, assault on staff and refusing a direct order." *Id.* at ¶ 86. Plaintiff spent twenty-eight days in punitive segregation for the misbehavior ticket. *Id.*

at ¶ 87. At his disciplinary hearing for the misbehavior report, Plaintiff was found guilty of refusing a direct order, and the remaining three charges were dismissed. *Id.* at ¶ 90. Plaintiff was sentenced to "time served" and a loss of certain privileges for the conviction. *Id.*

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth and must be discounted. *Id.* at 678. Next, as to any "well-pleaded factual allegations, a court should assume their veracity and determine whether they plausibly give rise to an entitlement of relief." *Id.*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## ARGUMENT

### POINT I: PLAINTIFF FAILS TO PLEAD THE PERSONAL INVOLVEMENT OF DEFENDANTS IN THE VIOLATION OF HIS CONSTITUTIONAL RIGHTS

Second Circuit law dictates that, to proceed on a claim for damages under § 1983, a plaintiff must demonstrate defendants' personal involvement in the claimed violation of plaintiff's rights. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983") (citation omitted). Plaintiff alleges six causes of action against all named defendants in this case. Specifically, Plaintiff alleges that all Defendants used excessive force on him, SAC, ¶¶ 97-100; all Defendants subjected him to cruel and unusual punishment by (i) imposing the deprivation order,

(ii) assaulting him, and (iii) filing and prosecuting a false infraction against him, *id.*, ¶¶ 101-104; all Defendants were deliberately indifferent to his serious medical needs, *id.*, ¶¶ 105-108; all defendants deprived him of due process by (i) subjecting him to the deprivation order, and (ii) forcing him to spend undeserved time in punitive segregation, *id.*, ¶¶ 109-115; and all Defendants failed to intervene to prevent the alleged unlawful conduct described throughout the SAC, *id.* ¶¶ 116-122.

The SAC can best be sub-divided into two alleged incidents: the December 30, 2014 deprivation order incident (the "December 2014 Incident"), in which Defendant Bunch ordered the brief shut down of Plaintiff's water and electricity for seven-and-a-half hours; and the November 23, 2015 force incident (the "Force Incident"), in which Defendants Cole, Gascho, Pappas, Sorge, and Waith allegedly used force on Plaintiff, colluded with Defendant Nurse Liciaga, who allegedly failed to provide proper medical care, to cover up the incident and place Plaintiff in punitive segregation. The December 2014 Incident and the Force Incident are two completely separate and independent incidents that have no common set of facts or defendants. *See* SAC, *passim*. Defendant Bunch is at no point alleged to have been involved in, participated in, or even been aware of the Force Incident. SAC ¶¶ 61-92. Similarly, there are no facts whatsoever connecting Defendants Cole, Gascho, Pappas, Sorge, Waith and Liciaga to have been involved in, participated in, or been aware of the December 2014 Incident. SAC ¶¶ 12-60.

Accordingly, the Third Claim (Cruel and Unusual Punishment for the lack of water and electricity), Fourth Claim (deliberate indifference to serious medical needs for the deprivation order), Fifth Claim (deprivation of due process for the deprivation order), and the Sixth Claim (failure to intervene) should be dismissed as to Defendants Cole, Gascho, Liciaga, Pappas, Sorge, and Waith for their lack of involvement in the December 2014 Incident. Similarly, the Second

Claim (excessive force),[2] Third Claim (Cruel and Unusual Punishment for use of excessive force, and filing/prosecuting a false infraction), Fourth Claim (deliberate indifference to serious medical needs), Fifth Claim (deprivation of due process for time spent in punitive segregation), the Sixth Claim (failure to intervene) should be dismissed as to Defendant Bunch for his lack of involvement in the Force Incident.[3]

Finally, Plaintiff's complaint entirely fails to state a claim as to Defendant Cole because there is a dearth of any factual allegation whatsoever against him. Defendant Cole's name appears only three times total: in the caption and two numbered paragraphs which state in an entirely conclusory fashion that Defendant Cole "assaulted [Plaintiff] or failed to stop an assault of [Plaintiff]."

### POINT II: PLAINTIFF FAILS TO STATE A CONDITIONS OF CONFINEMENT CLAIM BECAUSE THE DEPRIVATION ORDER IMPOSED, AT MOST, A *DE MINIMIS* BURDEN ON PLAINTIFF AND IS NOT SUFFICIENT TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT

To state a claim for unconstitutional conditions of confinement, Plaintiff must allege facts that "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Youmans v. City of N.Y.*, 14 F. Supp. 3d 357, 361 (S.D.N.Y. 2014) (Karas, J.).

To satisfy the objective element, the inmate must show that, either alone or in combination, the conditions "pose an unreasonable risk of serious damage to [inmate] health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citations omitted). Prison officials violate the Constitution when they deprive an inmate of his "basic human needs," such as food, clothing, medical care, and safe

---

[2] This claim should also be dismissed as to Defendant Liciaga for lack of personal involvement. *See, infra*, Point VI.
[3] As discussed, *infra*, some of the remaining claims fail on other grounds.

and sanitary living conditions. *Id.* A defendant cannot be deliberately indifferent unless he knows of and disregards the risk to the inmate's health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, deliberate indifference, or the "mens rea prong," *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017), is consistent with criminal recklessness. *Farmer*, 511 U.S. at 839-40. Duration and severity are considerations for a conditions of confinement claim. *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015).

Plaintiff alleges that Defendant Bunch shut off the water and electricity for A-North Block, which included Plaintiff's cell, on a single day from 11:00am until approximately 6:30pm. SAC ¶¶ 12, 25, 52. Additionally, Plaintiff alleges that he did not receive drinking water and that he could not take his medications. SAC ¶ 44. Plaintiff's Eighth Amendment claim fails because the alleged deprivations were not serious enough to violate any protected rights. Courts in this Circuit have repeatedly held that deprivations of longer duration fail to satisfy the objective component of an Eighth Amendment claim. *See, e.g.*, *Beckford v. New York State of Mental Health*, 06-CV-561, 2010 WL 1816689, at *12 (W.D.N.Y. May 3, 2010) (determining that a 22-hour deprivation of water and electricity does not rise to a constitutional violation) (collecting cases); *see also, Scalpi v. Town of East Fishkill*, No. 14-CV-2126, 2016 WL 858916, at *9 (S.D.N.Y. Feb. 29, 1016) (Karas, J) (citing cases) (finding that Plaintiff's claim that she was deprived of food, water, and sanitary needs "for several hours" was "not serious enough to violate due process"); *Warren v. Irvin*, 985 F.Supp. 350, 356-57 (W.D.N.Y. 1997) (depriving inmate of water and one meal for three days did not amount to Eighth Amendment violation). Even assuming that the water and electricity were briefly turned off for seven-and-a-half hours, during a single day, this *de minimis*

deprivation is not objectively sufficiently serious to state a claim under the Eighth Amendment. *Beckford*, 2010 WL 1816689, at *12.

Plaintiff's allegation that he was deprived of drinking water during the seven-and-a-half hours similarly fails to state a claim. As set forth above, Plaintiff was not denied the minimal necessities of civilized life for a substantial period of time; moreover, the alleged lack of drinking water was not a regular, continuous deprivation, and the facts alleged do not allege a serious injury. *See Bourdon v. Roney*, No. 99-CV-769, 2003 WL 21058177, at *11 (N.D.N.Y. Mar. 6, 2003); *Warren*, 985 F.Supp at 356-57; *also*, *Clay v. Lee*, 13-CV-7662, 2017 WL 436041, at *5 (S.D.N.Y. Jan. 27, 2017) (Karas, J.) (citing cases).

Finally, the response by prison officials to the conditions of Plaintiff's cell belies his claim of subjective deliberate indifference. First, the SAC itself indicates a legitimate reason for shutting off the electricity and water, to search for a missing mop wringer handle—an item that could be used as a weapon. As soon as Defendant Bunch returned to the block, he immediately restored the power and water to the area. SAC ¶ 52. While this provision precludes only compensatory damages, Courts have held that where prison officials resolve the problem rather than ignore it, they do not act with deliberate indifference. *Calhoun v. New York City Dept. of Correction*, No. 10-CV-182, 2014 WL 144659, at *8 (S.D.N.Y. Jan. 14, 2014). Moreover, the allegations are entirely conclusory that Defendant Bunch was aware of any particular risk to the Plaintiff from this brief shut-off of services.

### POINT III: THE PRISON LITIGATION REFORM ACT BARS PLAINTIFF'S CLAIMS BECAUSE HIS INJURIES WERE, AT BEST, DE MINIMIS

Section 1997e(e) of the Prisoner Litigation Reform Act ("PLRA") provides as follows: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of

physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) "applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002). "Courts have consistently held that section 1997e(e) bars prisoner civil rights suits seeking damages for constitutional violations where the inmate-plaintiff suffers only emotional and mental injury." *Cox v. Malone*, 199 F. Supp. 2d 135, 139 (S.D.N.Y. 2002) (citations omitted), *aff'd*, 56 Fed. Appx. 43 (2d Cir. 2003). When the complaint fails to allege a physical injury, "[t]hat omission is fatal." *Fincher v. City of New York*, No. 09-CV-10318, 2010 WL 3719236, at *1 (S.D.N.Y. Sept. 20, 2010).

Here, Plaintiff has alleged no physical injury, but instead has only alleged non-physical and speculative injuries such as "pain and suffering" and "other physical manifestations of his medical conditions as a result of his inability to take" his medication. SAC ¶ 44. Plaintiff does not describe what "physical manifestations" he suffered. Such allegations are insufficient to establish a physical injury because unspecified allegations of "pain and suffering" are, at best, *de minimis*. *See Dillon v. City of New York*, No. 12-CV-7775, 2014 WL 658095, at *2 (S.D.N.Y. Feb. 19, 2014) (finding "bumps on [inmate's] private parts" and "pain and suffering" was a de minimis physical injury, which failed to satisfy condition required under § 1997e(e)); *cf. Clay*, 2017 WL 436041, at *8 (finding that plaintiff failed to assert *any* physical effect when he suffered "terror from the giant cockroaches," "pain and mental anguish," and "thirst.").

### POINT IV: PLAINTIFF FAILS TO ALLEGE A SUBSTANTIAL BURDEN ON HIS FIRST AMENDMENT RIGHTS

Plaintiff alleges that his First Amendment rights were violated because his faith requires "regular washing and ablutions," and the water deprivation during the December 2014 Incident therefore "cause[d] him spiritual, mental and emotion[al] distress by preventing [him] from

complying with [his] religious practices." SAC at ¶ 35. The allegation that the temporary lack of water inconvenienced his ability to "complete religious practices" does not state a claim because it is a de minimis burden and not actionable under the First Amendment. Moreover, any alleged deprivation resulted from a mere oversight or mistake, which is not actionable under the First Amendment.

The right to free exercise is not "absolute or unbridled, and is subject to valid penological concerns." *Johnson v. Guiffere*, No. 04-CV-57, 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007). As a threshold matter, "[t]he prisoner must show…that the disputed conduct substantially burdens his sincerely held beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) (citation omitted).[4] "The relevant question in determining whether [a plaintiff's] religious beliefs were substantially burdened is whether [the conduct] is considered central or important to [the plaintiff's practice of his religion.]" *Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003). The defendants bear the "relatively limited burden of identifying legitimate penological interests that justify the impinging conduct; 'the burden remains with the prisoner to show that these [articulated] concerns were irrational.'" *Salahuddin*, 467 F.3d at 275 (*quoting Ford*, 352 F.3d at 595) (additional citations omitted).

A substantial burden stands in contrast to a *de minimis* burden on the free exercise of religion. Burdens that are less than substantial or isolated are not of constitutional dimension. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) ("There may be inconveniences so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim, '*deminimis non curat lex*' applies."); *Brown v.*

---

[4] The Second Circuit has not explicitly adopted the "substantial burden" test, *see e.g., Ford v. McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003), but it has been applied in many recent district court decisions. *Powell v. City of New York*, No. 14-CV-9937, 2016 WL 4159897, at *5 (S.D.N.Y. July 14, 2016).

*Graham*, 470 Fed. Appx. 11, 15 (2d Cir. 2012). Courts in this Circuit have held that missing a small number of religious services, even during the Muslim holy month of Ramadan, does not constitute a substantial burden on an inmate's freedom to practice his religion. *Simmons v. Adamy*, 987 F. Supp. 2d 302, 309 (W.D.N.Y. 2013) (plaintiff's religious exercise not substantially burdened where defendants scheduled plaintiff's library call-outs during weekly Quranic religious studies and religious services during Ramadan).

Moreover, missing religious services, especially as a result of a mistake, may not be enough to substantially burden an inmate's rights. *See Scott v. Shansiddeen*, No. 12-CV-84, 2013 WL 3187071, at *4 (N.D.N.Y. June 20, 2013) ("missing two Eid-ul-Adha religious meals, especially as the result of a mistake, is not enough") (citing cases); *Powell*, 2016 WL 4159897, at *5 (failure to call inmate for two consecutive Friday services was no more than a negligent oversight and quickly remedied).

Here, Plaintiff fails to allege facts showing that any defendant placed a substantial burden on his religious beliefs. The SAC does not allege that Plaintiff was prohibited from praying, prevented from attending any services, or forced to violate a central tenet of the Muslim faith. *See Leach v. New York City*, No. 12-CV-3809, 2013 WL 3984996, at *6 (S.D.N.Y. Aug. 2, 2013) (dismissing the Eighth Amendment claim because the "[c]omplaint makes no mention of any occasion where [plaintiff] was prohibited from attending Jewish services or forced to violate a central tenet of his religious faith."). Plaintiff allegedly could not fully comply with his washing and ablutions for at most a seven-and-a-half hour period during the 2014 Incident; however, Plaintiff does not allege that he was ever prevented from performing his daily prayers. ¶¶ 35, 46 ("Plaintiff was unable to perform his ablutions in accordance with these religious practices [of washing and ablutions]"). Nor does Plaintiff allege that the conduct continued beyond the 2014

Incident. Even assuming that Plaintiff was unable to pray during this brief period, and that any Defendant was aware of this fact (which is not alleged), such an isolated incident is insufficient to demonstrate more than a *de minimis* burden. *Leach*, 2013 WL 3984996, at *6 ("Isolated denials of [religious meals] are a minor inconvenience and do not meet the substantial burden requirement."). Furthermore, the deprivation order was left in place as a mere oversight—because Defendant Bunch was called away from the block, but restored the water and electricity upon his return. Plaintiff fails to allege any facts whatsoever that Defendant Bunch kept off the electricity and water for any other reason than a negligent oversight because of the requirements of his job. *See* SAC ¶52 (deprivation order was left in effect while Defendant Bunch was called away to a different part of Sullivan CF). This oversight is not sufficient to establish a violation. *Scott*, 2013 WL 3187071, at *4.

Finally, Defendant Bunch had a legitimate reason for the deprivation, which was for security purposes. A wringer handle not contained on the mop bucket could be used as a weapon and jeopardize the safety and security of the facility. Defendant Bunch's stated purpose was to retrieve the handle that was missing. *See* SAC ¶ 27. It is axiomatic that a prison facility has a legitimate penological interest in maintaining safety and security within the facility. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350-51 (1987). Accordingly, temporarily shutting off the water to prevent an inmate from flushing or destroying contraband is legitimately related to the penological interest of maintaining institutional safety and security.

Additionally, Defendants Cole, Gascho, Liciaga, Pappas, Sorge, and Waith move to dismiss Plaintiff's claim that they violated any rights protected by the First Amendment. *See* Am. Compl. at ¶¶ 94, 115. Plaintiff has failed to allege any facts allegation whatsoever indicating that

these individuals violated any of Plaintiff's protected First Amendment activities. *See* Am. Compl. *passim;* Point I, *supra.*

## POINT V: PLAINTIFF FAILS TO ALLEGE THAT ANY DEFENDANTS VIOLATED HIS DUE PROCESS RIGHTS

First, Plaintiff concedes[5] that there is no valid due process claim as to Defendants Cole, Gascho, Sorge, Pappas, and Waith because there is "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Accordingly, this claim should be dismissed as to those defendants.

### A. The Deprivation Order Did Not Violate Plaintiff's Rights to Due Process

Plaintiff argues that Defendant Bunch's deprivation order violated his rights to due process. Discipline in the prison context can implicate constitutional protections, but only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Loss of water and electricity for seven-and-a-half hours does not rise to the level of "atypical and significant hardship" protected by *Sandin.* The brief isolated deprivation is not the kind of hardship that is conscience-shocking or oppressive in the constitutional sense. *Sims v. Gorman*, 09-CV-6643, 2012 WL 566875, at *8 (W.D.N.Y. Feb. 21, 2012) (given Plaintiff's history of suicide attempts and brief length of one day, the deprivation order that Plaintiff be placed in his stripped cell with nothing but a half-inch mat was "not arbitrary or conscience-shocking in the constitutional sense"). Even if the brief shut down of Plaintiff's electricity and water was incorrect or ill-advised, given the need to ensure

---

[5] In an email dated July 3, 2017, Plaintiff's counsel informed this Office of Plaintiff's withdrawal of the Due Process claim as to Defendants Cole, Gascho, Sorge, Pappas, and Waith for allegedly filing a false misbehavior ticket.

institutional security and safety, and the brevity of the deprivation, Plaintiff fails to allege that he was subjected to arbitrary or conscience-shocking conduct. *Id.*

**B. *Plaintiff's Time Spent in Punitive Segregation Did Not Violate Due Process***

To the extent that Plaintiff contests that his time spent in punitive segregation after the Force Incident violated due process, courts in this Circuit have affirmed the dismissal of due process claims in cases where, as here, the period of time spent in punitive segregation—less than thirty days—was exceedingly short, without any indication of unusual conditions. This does not implicate a liberty interest! *See Palmer v. Richards*, 364 F.3d 60 (2d Cir. 2004); *Hynes v. Squillance*, 143 F.3d 653, 658-59 (2d Cir. 1998) (21 days in keeplock); *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998) ("combined effects of [the plaintiff's 18] day segregation plus exercise deprivation and verbal harassment" did not distinguish plaintiff's circumstances from *Sandin*). Plaintiff was found guilty of disobeying a direct order and served twenty-eight days in punitive segregation. Without any allegation of unusual conditions, this does not rise to the level of hardship that would create a liberty interest in avoiding segregation for misbehavior. Moreover, to the extent that Plaintiff attempts to bring a due process claim based on the alleged assault, interference with his religious practice, and deprivation order, SAC ¶¶ 110, 111, 113, any such claim should be dismissed as duplicative of his Eighth and First Amendment claims.

### POINT VI: PLAINTIFF FAILS TO STATE A FAILURE TO INTERVENE CLAIM

Plaintiff alleges that Defendants failed to intervene to prevent conduct that violated Plaintiff's First, Fourth, Fifth, Eighth, and Fourteenth Amendments. In the context of a failure to intervene claim, a defendant displays "deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene." *Williams v. Russo*, No. 01-CV-6401, 2009

WL 185758, at *3 (W.D.N.Y. Jan. 26, 2009). "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by *other* law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (emphasis supplied); *Mowry v. Noone,* No. 02-CV-6257, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004). In order to establish liability on the part of a defendant under this theory, a plaintiff must prove the violation of a constitutional right by someone other than the individual and that the defendant under consideration 1) possessed actual knowledge of the violative conduct; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the violative conduct. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Espada v. Schneider*, 522 F.Supp.2d 544, 555 (S.D.N.Y.2007).

## A. Nurse Liciaga

Here, Plaintiff alleges that Defendant Liciaga "failed to intervene to halt the violation of [Plaintiff's] due process rights...[which] paved the way for Defendants to hustle [Plaintiff]...into punitive segregation without medical treatment." Pl. Letter dated March 6, 2017, ECF No. 32, 3. First, Defendants did not violate Plaintiff's right to process when they issued an allegedly false misbehavior report. *See supra*, Pt. IV; *Freeman*, 808 F.2d at 951. Moreover, Plaintiff's time in punitive segregation did not violate any constitutionally protected rights. *Supra*, Pt. IV. Thus, at best, Plaintiff's claim is that Defendant Liciaga failed to intervene to prevent her own alleged deliberate indifference to Plaintiff's medical needs. This allegation fails to state a claim because it lacks the third-party relationship required for a failure to intervene claim. *Anderson*, 17 F.3d at 557.

### B. *Defendant Bunch*

Defendant Bunch is the sole individual Plaintiff alleges to have interfered with his First Amendment rights. SAC, *passim*; ¶¶ 12-60. Accordingly, this claim must be dismissed as to him because it similarly lacks the third-party relation for a failure to intervene claim. *Anderson*, 17 F.3d at 557.

### POINT VII: DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants are also entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability," the "driving force" for which is a "desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted). Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (internal citations omitted). The Second Circuit has instructed that "[t]he issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133-134 (2d Cir. 2010)).

While Supreme Court case law does not "require a case directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S.Ct. at 551 (quotation omitted). In other words, immunity protects, "'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*

As set forth above, the SAC does not allege facts sufficient to show that Defendant Bunch violated Plaintiff's constitutional rights; nor did Defendants violate Plaintiff's due process rights. *See* Points I-VI, *supra*. Moreover, the complaint does not allege facts sufficient to show the personal involvement of Defendants in the various claims of the SAC. *See* Point I, *supra*. Because there is no constitutional violation alleged, Defendants are entitled to qualified immunity for this reason alone. *See Iqbal*, 566 U.S. at 672-73.

Even if there were a constitutional violation alleged, Defendants are still entitled to qualified immunity because a reasonable prison official in Defendant's position could have believed that the alleged action did not violate a clearly established constitutional right. In particular, a reasonable prison official could have believed that temporarily shutting off the electricity and water would not violate that inmate's clearly established constitutional rights, particularly where the deprivation was brief and issued in order to maintain institutional security and safety. A reasonable official could also have believed that interfering with ablutions for merely seven hours, was not a substantial burden on First Amendment rights. Moreover, a reasonable official could have believe that placing an inmate in punitive segregation for twenty-eight days did not violate that inmate's constitutional rights. Thus, the SAC should be dismissed in its entirety against Defendant Bunch, and the due process claims against Defendants because they are entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request the dismissal of the SAC

in its entirety as to Defendant Bunch, and the respective claims as against the other defendants.[6]

Dated: New York, New York
July 21, 2017

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the
  State of New York
Attorney for Defendants
By:

COLLEEN K. FAHERTY
Assistant Attorney General
120 Broadway
New York, New York 10271
(212) 416-6046
Colleen.Faherty@ag.ny.gov

---

[6] Defendants are not moving on the Excessive Force